UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.

JAMES ALVIN CHANEY,

    Defendant/Movant.

)
)
)
)
)
)
)
)
)
)
)

No. 6:14-CR-37-GFVT-HAI-1

RECOMMENDED DISPOSITION

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Federal prisoner James Alvin Chaney has filed a motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. D.E. 575. The government responded in opposition (D.E. 617) and Chaney replied (D.E. 620). The record contains the transcripts of various hearings, the 25-day jury trial, an evidentiary hearing, the sentencing, and an *in camera* interview with Juror #116. D.E. 130, 244, 252, 291, 293-94, 300, 312-23, 332-44, 348-49, 354-55, 392-400, 402-04, 407-24, 459-60, 508, 532-33. Chaney has also filed a motion to unseal "all court filings," although this motion largely references the sealed filings at D.E. 598 (D.E. 621), and a "request for judicial response" (D.E. 628). That motion will be addressed by separate order.

The Court recognizes that Chaney is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than motions prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the

sentence exceeds the maximum authorized by law.  28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence.  *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

## I. Background

Chaney and his wife Lesa Chaney owned and operated Ace Clinique of Medicine, LLC. D.E. 190.  Chaney, Lesa, and Ace Clinique were indicted in October 2014, and superseding indictments were later returned in April and December 2015.[1] D.E. 1, 136, 190.  The indictments charged Chaney and his co-defendants with various controlled substance, money laundering, and fraud offenses.  In November 2014, Chaney and his co-defendants filed a joint motion to suppress evidence seized during the search of Chaney's home, the hangar where Chaney kept a small private airplane, and Ace Clinique.  D.E. 71.  The undersigned recommended that the motion should be granted in part as to (1) evidence seized from the hangar and (2) evidence existing prior to March 2006 that was seized from Ace Clinique or the Chaney's residence due to a lack of particularity, but should otherwise be denied.  D.E. 125.  Judge Van Tatenhove adopted the undersigned's recommendation on May 26, 2015, over Defendants' objections (D.E. 134).  D.E. 159.

Following a 25-day trial in February 2016, a jury returned a mixed verdict and found Chaney guilty of conspiracy to distribute Schedule II and III controlled substances; distribution of Schedule II controlled substances and aiding/abetting; distribution of Schedule III controlled substances and aiding/abetting; maintaining a drug-involved premises; conspiracy to commit

---

[1] The indictment also named Gregory Hoskins, but Judge Van Tatenhove granted the government's motion to dismiss the indictment as to this defendant on April 27, 2016.  D.E. 292.

money laundering; acquiring and obtaining possession of controlled substance by misrepresentation, fraud, forgery, deception and subterfuge, and aiding and abetting; conspiracy to commit health care fraud; health care fraud and aiding and abetting; false statements relating to health care matters and aiding and abetting; and engaging in monetary transactions/property greater than $10,000/unlawful activity.  D.E. 489 at 1-3.  He was found not guilty on dozens of charges.  *Id*. at 1.

During the trial and after entry of the verdict, an alternate juror voiced concerns with the other members of the jury:

> On the fifth day of the Chaneys' trial, a court clerk briefly relayed to the Court some information that she had received from the jury administrator about a recent conversation between the administrator and one of the trial's alternate jurors. The administrator told the court clerk—and the clerk then told the Court—that this alternate had expressed "some frustration with the process" and "concerns about how serious[ly] the jury was taking their duty." [R. 291 at 3, TR: 4/20/16 Telephonic Conference at 7.] The clerk did not provide any detail about the specific comments and/or behavior that apparently caused the alternate's concern, and the alternate did not report any of these concerns to the Court.
>
> Armed with only a skeletal, third-hand allusion to one alternate's frustration, the Court determined that further investigation would be premature. But in an effort to uncover any concerns that might actually warrant an investigation, the Court immediately instructed the jury that if "any issues . . . relate[d] to the jury instructions" arose, they should "bring those to [the Court's] attention." [TR: Trial, Day 5 at 1.] Despite this instruction, the Court never heard from the alternate or any other juror.
>
> The timeline then jumps to the day after the close of trial. On this day, the same alternate called the law offices of Dr. Chaney's counsel and left a voicemail. The alternate identified herself as a juror in the Chaneys' trial, and suggested that counsel would be "glad if [she] called her" back. [TR: 4/20/16 Telephonic Conference at 3.] Counsel reported this message to the Court, and the parties promptly convened for a telephonic conference.
>
> At the time, neither the Court nor the parties knew if the alternate's allegations concerned potentially "extraneous" or "outside" influences. Without this information, the Court decided that additional investigation was necessary. About a week later, the Court conducted an *in camera* interview with this alternate, and later agreed to file that interview in the record under seal. [R. 291.]

D.E. 371 at 18-20.  During the *in camera* interview, Juror 116 described the underlying events prompting her to contact Chaney's counsel after the trial:

> First, she reported overhearing two jurors 'talking about the case' immediately after the Government's opening statement; specifically, she remembered these jurors making a comment about pictures of Dr. Chaney's house that the Government had shown in its opening statement.  [Juror 116] then allegedly told these jurors that they 'shouldn't be talking about that,' to which they responded, 'We can talk about it in here.'  Another juror replied, 'We can't,' and then added, 'It's right on the wall there.'  Second, the alternate stated that after an 'elderly lady testified' sometime later, one of these same two jurors said counsel 'shouldn't have treated her that way, whatever they meant, you know.'  Third, she indicated that one of these same jurors 'got attracted' to Dr. Chaney's counsel and 'made it known' to the other jurors.  Finally, she recalled hearing a third juror declare that she knew 'how many lights' were 'in the ceiling' after a particularly long bout of testimony.

*Id.* at 20-21 (internal citations omitted).  Juror 116 also indicated that she had brought these concerns to the jury administrator during the trial on two occasions, and, during the second occasion, the jury administrator told Juror 116 to "just ask the jurors not to do that."  D.E. 291 at 4.  During one of those occasions the jury administrator said she would "talk to them in a way that they – they won't know and make [Juror 116] uncomfortable[,]" which, according to Juror 116, "she did."  *Id.* at 6.

The Court filed the transcript of the *in camera* interview of Juror 116, and Defendants subsequently requested permission to further investigate her claims.  D.E. 371 at 21. The Court denied the request "[b]ecause the alternate's account revealed no concerns about any external influences on the jury's deliberation process – and because Rule 606(b) expressly prohibits post-verdict investigation of any other influence on this process."  D.E. 371 at 21.  Defendants subsequently moved for a judgment of acquittal and new trial on all counts, arguing, in part, that the jurors' alleged misconduct and the Court's treatment of the allegations deprived them of their right to a fair trial.  D.E.  296-99.

During this time, Defendants also filed a joint motion for leave to contact Juror 34 based on an affidavit of Chaney's brother describing a conversation he allegedly had with the juror. D.E. 353. The Court ordered Defendants to submit a proposed questionnaire for the juror. D.E. 358. After considering objections from the government and striking some of the proposed questions, the Court finalized the questionnaire and scheduled a time for Juror 34 to complete it. D.E. 365. Following its review of the completed form, the Court notified the parties that "[t]he questionnaire reveal[ed] no concern about outside or extraneous influence on the jury's deliberation process." D.E. 367.

Judge Van Tatenhove then denied the motions for a new trial and acquittal, holding that "[t]he clerk's vague report of one alternate's frustration did not suggest that jurors were deliberating prematurely, the Court took basic remedial action in the wake of this report, and the well-developed record reveals that this alleged misconduct—even accepted as true—did not prejudice the Chaneys' right to a fair trial." D.E. 371 at 33-34. Judge Van Tatenhove incorporated by reference his discussion of the Juror 34 issue in his order denying the motions. *Id.* at 20, n.16.

By Judgment entered September 29, 2017, Chaney was sentenced to a total sentence of 180 months.[2] D.E. 489 at 2. Chaney and his co-defendants appealed to the Sixth Circuit and argued that the Court erred in its determination that the search warrants in this matter were constitutional, that there was insufficient evidence to sustain their convictions, that juror misconduct required a new trial, and that their sentences were procedurally unreasonable because the Court failed to address drug-amount calculation arguments and erred in calculating. D.E. 549. The Sixth Circuit affirmed the Court's judgment (D.E. 549), and Chaney filed a petition for certiorari in the Supreme

---

[2] An Amended Judgment was entered on November 7, 2017, to clarify the amount of restitution to be paid jointly and severally by Chaney and his co-defendants. D.E. 519.

Court of the United States on July 10, 2019, which was denied on October 7, 2019.  D.E.  552; D.E. 553.

On July 9, 2020, per the prison mailbox rule,[3] Chaney timely filed his motion under § 2255. D.E. 575.  The motion alleges thirteen grounds for relief:

(1) Ineffective assistance of trial counsel for failure to investigate communications between Juror 116, the jury administrator, and other members of the jury.  *Id.* at 5.

(2) Ineffective assistance trial of counsel for failure to investigate communications between the jury administrator and the jury.  *Id.*

(3) Ineffective assistance of trial and appellate counsel for failure to investigate, develop, and argue the "extraneous influence issue."  *Id.*

(4) Ineffective assistance of trial counsel for failure to object to the post-trial questionnaire of Juror 34 and investigate who denied him an audience with the Court.  *Id.*

(5) Ineffective assistance of trial counsel for failure to preserve argument regarding the Court's erroneous analysis of Federal Rule of Evidence 606(b) for appeal.  *Id.* at 7.

(6) Ineffective assistance of trial counsel for failure to preserve argument regarding a violation of Federal Rule of Criminal Procedure 43 for appeal.  *Id.* at 7.

(7) Ineffective assistance of trial and appellate counsel for forfeiting a motion to suppress all property seized during the search of Ace Clinique, Chaney's residence, and Chaney's airplane hangar. *Id.* at 10-13.

---

[3] Under the prison mailbox rule, a court filing is considered to be received by the Court the moment an inmate deposits it in the institution's legal mail system.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)).

(8) Ineffective assistance of trial and appellate counsel for failure to argue that the FBI withheld evidence of the Kentucky Board of Medical Licensure's ("KBML") and the Kentucky Attorney General's investigations in the applications for the search warrants. *Id.* at 14.

(9) Ineffective assistance of trial counsel for failure to consult and hire and call experts during trial. *Id.* at 15.

(10) Ineffective assistance of trial counsel for failure to investigate the government's expert witnesses prior to trial. *Id.* at 16.

(11) Ineffective assistance of trial and appellate counsel for failure to argue that a witness "presented and introduced the Kentucky Attorney General to Chaney's office for the purpose of extorting financial contributions while Chaney and Ace Clinique were under investigation by state prosecutors." *Id.* at 17.

(12) Ineffective assistance of trial and appellate counsel for failure to present evidence of political intimidation and coercion by a witness that would have challenged and impeached the credibility and motives of the witness and investigators. *Id*. at 18.

(13) Ineffective assistance of appellate counsel from counsel's own admission. *Id.* at 19.

Chaney's grounds are often repetitive, overlapping, and contain multiple theories. Additionally, Chaney's reply memorandum (D.E. 620) expands the claims in his original motion. Although some of his expanded arguments have been considered below, arguments made for the first time in a reply brief are waived and merit no consideration. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010). Finally, Chaney's reply memorandum contains many factual assertions, but they were not accompanied by any declaration that they were made under penalty of perjury.

## II.  Legal Standards for IAC

To successfully assert an ineffective assistance of counsel ("IAC") claim, a defendant must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).   To prove deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Strickland*, 466 U.S. at 688.  But "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id*. at 689 (internal quotations omitted).

In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.  When evaluating prejudice, courts generally must consider the "totality of the evidence."  *Strickland*, 466 U.S. at 695.  Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry.  *Id*. at 697.

This standard applies to claims of ineffective assistance of appellate counsel raised in § 2255 motions. *Ballard v. United States*, 400 F.3d 404, 407 (6th Cir. 2005); *see also Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (holding that the right to effective assistance of counsel includes the right to effective assistance of appellate counsel).

### III.  Claims Concerning Jurors 116 and 34

Chaney raises several arguments regarding Juror 116 and Juror 34.  Specifically pertaining to Juror 116, Chaney argues that his trial and appellate counsel failed to properly argue that the jury administrator's communications acted as an extraneous influence on the jury.  D.E. 575-1 at 12.  According to Chaney, his trial and appellate counsel's failure to specifically argue that the jury administrator acted as an extraneous influence deprived him of the *Remmer* hearing he was entitled to.  *Id.* at 15, 17, 21.  Similarly, Chaney argues that counsel should have conducted an investigation and requested a *Remmer* hearing outright.  *Id.* at 12, 31.  Stemming from this, Chaney argues that counsel should have also objected and argued that this extraneous influence resulted in Judge Van Tatenhove's misapplication of Federal Rule of Evidence 606(b).  *Id.* at 15.  Chaney also argues that the jury administrator's communications with the jury constituted private instructions in violation of Federal Rule of Criminal Procedure 43, which his counsel failed to raise.  *Id.*

As to prejudice, Chaney argues that he was deprived a *Remmer* hearing, through which he asserts he would have been able to prove a Sixth Amendment violation, and the ability to litigate the Rule 43 violation.[4]  *Id.* at 16.  Specific to appellate counsel, Chaney argues that the Sixth Circuit would have remanded the case had counsel argued that the trial judge was required to hold a *Remmer* hearing *sua sponte* and that the Court's post-verdict interview was not equivalent to such a hearing.  *Id.* at 33-34.

---

[4] Chaney also argues that he was prejudiced by being denied *Remmer's* presumption of prejudice that is afforded at the trial level.  D.E. 575-1 at 31-33.  However, "[a]ccording to the Sixth Circuit, no presumption of prejudice arises from an unauthorized contact with the jury. . . . The Defendant bears the burden of proving actual juror bias.*"  Mays v. Chandler*, 6:06-426-DCR, 2007 WL 2903212, at *6 (E.D. Ky. Sept. 28, 2007), *aff'd*, 342 Fed. Appx. 159 (6th Cir. 2009) (citing *United State v. Cooper*, 868 F.2d 1505, 1523 (6th Cir. 1989)); *see also McCauley v. Palmer*, 2:14-CV-11198, 2014 WL 10486791, at *7 (E.D. Mich. Sept. 9, 2014), *report and recommendation adopted*, 2:14-CV-11198, 2015 WL 5771930 (E.D. Mich. Oct. 2, 2015) ("In light of *Smith*, the presumed prejudice language of *Remmer* is no longer good law . . .").  Chaney acknowledges the presumption does not apply in the context of an IAC claim.  D.E. 575-1 at 33.

In order to obtain a *Remmer* hearing:

> A defendant must do more than simply raise the possibility of bias. . . . To the contrary, a trial court needs to conduct a *Remmer* hearing only when the defense raises a colorable claim of extraneous influence. An 'extraneous influence' is one derived from specific knowledge about or a relationship with either the parties or their witnesses. Examples of extraneous influences include prior business dealings with the defendant, applying to work for the local district attorney, conducting an out-of-court experiment, and discussing the trial with an employee.

*Jackson v. Bradshaw*, 681 F.3d 753, 766 (6th Cir. 2012) (internal citations omitted).

Chaney's IAC claims pertaining to the communications raised by Juror 116's interview and the Court's subsequent Rule 606(b) analysis fail for lack of prejudice. Chaney's arguments stem from the information disclosed during the *in camera* interview of Juror 116. He speculates as to what else might have been discovered if counsel had simply described the events as involving an "extraneous influence," but he offers no authority that any of the known communications fall within that narrow concept. [5]

Most importantly, the Sixth Circuit held that ***none*** of the incidents described in that interview were even potentially prejudicial:

> Juror 116 was clear when she spoke with the district judge, and the nature of the supposed misconduct is clear. ***It is nothing that could have possibly prejudiced the defendants***. . . . [E]ven if counsel has been informed of every 'incident,' nothing would have even approached necessitating a new trial.

D.E. 549 at 32 (emphasis added).

Rarely do appellate courts speak in such categorial and absolute terms. The Sixth Circuit's interpretation of the record is clear, regardless of any argument trial or appellate counsel could or should have made. ***There was not even the possibility of prejudice*** stemming from any of the

---

[5] The Court is unaware of a Sixth Circuit case holding that a jury administrator's comments such as those described by Juror 116 constitute misconduct. Chaney cites to a Supreme Court case holding that statements made by a bailiff to some members of the jury were prejudicial. *Parker v. Gladden*, 385 U.S. 363, 364 (1966). However, the statements made by the bailiff included that the defendant was wicked and guilty and that the Supreme Court would correct any erroneous finding of guilt. *Id.* at 363-64. These statements are vastly different than those made by the jury administrator as described by Juror 116.

10

events described during the *in camera* interview of Juror 116, including any statements made by the jury administrator.  This forecloses the possibility of any prejudice from trial and appellate counsel's failure to raise the extraneous influence, Rule 43, and Rule 606(b) arguments relating to the *in camera* interview.  While Chaney attempts to reinterpret Juror 116's description of the communications from the jury administrator as "obviously concern[ing] matters before the court and jury, particularly matters put into evidence[,]" the Sixth Circuit has already interpreted the record and found that "nothing would have even approached necessitating a new trial" and that "nothing . . . could have possibly prejudiced the defendants."  D.E. 549 at 32.  This Court certainly cannot find a reasonable possibility of a different outcome where the Sixth Circuit has already ruled that none of the underlying events could have even ***possibly*** created prejudice.  Thus, the undersigned recommends that these claims be denied.

Next, Chaney argues that his trial counsel should have objected, argued, and preserved the issue of who denied Juror 34 an audience with the Court.  *Id.* at 29.  However, this argument also fails for Chaney's failure to show prejudice.  Chaney's trial counsel filed a proposed juror questionnaire for the Court's consideration.  D.E. 359.  The proposed questionnaire included questions pertaining to whether Juror 34 or another juror sought to communicate to the district judge, whether they were given the opportunity to do so, and, if not, what the subject was of the desired communication.  D.E. 359 at 3.  However, Judge Van Tatenhove struck those questions from the questionnaire, holding that the questions were "unfounded, ambiguous, and/or unrelated to any outside influence on the deliberation process."  D.E. 365 at 1.  The questionnaire did include questions regarding whether any juror had brought up information learned outside of the courtroom and if the jury's attention was called to information not presented as evidence during trial.  *Id.* at

11

4.   After Juror 34 completed the questionnaire, Judge Van Tatenhove found that it "reveal[ed] no concern about outside or extraneous influences on the jury's deliberation process."  D.E. 367 at 2.

Accordingly, even if trial counsel had objected to the finalized version of the questionnaire or initially included a specific question asking who denied Juror 34 an audience with the district judge, Chaney cannot show that such an objection would have been granted or that the question would have been included.  Rather, based on the other questions being stricken, Chaney's proposed question would have likely also been stricken and any objection would have been overruled.  More importantly, Chaney provides no evidence that Judge Van Tatenhove's holding on the external influence issue was erroneous.  The questionnaire clearly indicates that the jury did not bring up or otherwise call attention to any information learned outside of the courtroom.  D.E. 367. Chaney simply asserts that the person who denied Juror 34 an audience must have been court personnel and that the denial was "inherently prejudicial" (D.E. 575-1 at 29), but these arguments are assumptive, conclusory, and speculative, which is not sufficient to meet his burden.  *See Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) (citing *Strickland*, 466 U.S. at 693) ("The defendant must affirmatively prove prejudice.").  Thus, the undersigned recommends that these claims be denied.

## IV.  Claims Concerning the Motion to Suppress

Next, Chaney argues that trial and appellate counsel were ineffective for failing to argue that all property seized during the search of Ace Clinique, Chaney's home, and the airplane hangar should be suppressed and that material evidence was withheld from the warrant applications that exonerate him.  D.E. 575-1 at 36.  Specifically, Chaney argues that his trial and appellate counsel were ineffective for failing to argue that the agents conducting the searches flagrantly disregarded the terms of the search warrants and exceeded their scopes.  *Id.*  Chaney also argues that his counsel

12

should have argued that the search warrant applications lacked material information from the KBML's and Kentucky Attorney General's previous investigations.  *Id.*

In November 2014, Defendants filed a joint motion to suppress evidence seized based on a lack of probable cause and particularity, stale allegations, false and misleading information within the affidavits, and material information being omitted from the affidavits.  D.E. 71 at 1-2. The motion was referred to the undersigned, and a report and recommendation was entered.  D.E. 125.  Judge Van Tatenhove subsequently adopted the recommendation, resulting in the suppression of any evidence seized from Ace Clinique or the Chaney's residence generated prior to March 2006 and any evidence seized from the airplane hangar owned by Ace Clinique.  D.E. 159.  However, the motion to suppress was otherwise denied.  *Id.*

Following Agent Lambdin's testimony at trial that all files were taken during the execution of the search warrants, Defendants renewed their motion to suppress as to the particularity issue. D.E. 261.  Based on the language in the motion, Judge Van Tatenhove construed Defendants' argument as, "even if the warrant itself was constitutional, the agents' supposed 'deliberate and willful disregard' of the warrant's scope require[d] a blanket suppression of the patient files seized in the raid."  D.E. 273 at 3.  Judge Van Tatenhove denied the motion, holding, in part, that the argument failed for two reasons:

> First, it is not at all clear that the officers exceeded the scope of the warrant. The warrant's list of recoverable items included 'patient files for patients,' without reference to specific patient names. . . . Second, even accepting that the agents' search exceeded the scope of the warrant, it does not necessarily follow that those patient files introduced at trial – which the Defendants apparently do no characterize as beyond the scope of the warrant – should be suppressed. . . . [T]he Court cannot say that the agents acted in bad faith or otherwise 'flagrantly disregard[ed] the limitations of' the warrant.

*Id.* at 3-5.

In support of his present claim, Chaney argues that his trial and appellate counsel were ineffective "for failing to notice, object, and appeal the ground for suppression recognized by the Sixth Circuit." D.E. 575-1 at 40. As an initial matter, Chaney claims that the Sixth Circuit "pointed out that counsel was 'ineffective' in their argument, by clearly and consciably 'ignoring and sacrificing' the obviously dispositive issues at hand." D.E. 575-1 at 39. However, the portion of the Sixth Circuit's opinion that Chaney references makes no such conclusion:

> A final point deserves emphasis: the defendants do not challenge on appeal the execution of the warrant. Rather, they focus their arguments on the constitutionality of the warrant. Therefore, the manner in which the agents executed the search – namely, that they took all of the clinic's files, seemingly without review to see whether they constituted evidence of the named crimes – is of no moment. The defendants could have objected to the introduction of specific pieces of evidence as seized beyond the scope of the warrant, and, had the district court ruled against the defendants on those objections, we could have considered that on appeal. Those arguments, however, were not made below. We consider only the facial constitutionality of the warrant, and on those grounds the defendants' arguments all fail.

D.E. 549 at 18. The Sixth Circuit simply specified the contours of its holding based on the specific claims Defendants raised on appeal. The Sixth Circuit did not hold or otherwise "point out" that Chaney's counsel was ineffective, as that issue was not before it.

As to Chaney's argument that his trial counsel should have raised that the search exceeded the scope of the warrant, Judge Van Tatenhove liberally construed the renewed motion to suppress as arguing for blanket suppression due to a "deliberate and willful disregard" of the scope of the warrant. D.E. 273 at 3. Judge Van Tatenhove held that "[e]ven granting that the Defendants have sufficiently developed this argument . . . their claim still fails." *Id.* Thus, Judge Van Tatenhove fully considered this argument in denying Defendants' renewed motion to suppress. Chaney provides no argument as to why Judge Van Tatenhove's order or analysis was erroneous. Even if his trial counsel had presented all of the arguments Chaney includes in his § 2255 motion, he

provides no evidence as to how this would have altered Judge Van Tatenhove's holding. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Thus, for Chaney to succeed on this claim, "a meritorious Fourth Amendment issue is necessary." *See id.* at 382.

As to Chaney's argument that trial or appellate counsel should have made an argument similar to the one suggested in the Sixth Circuit's opinion, this claim fails for a lack of deficient performance and prejudice. Chaney's § 2255 motion lacks any indication as to what items were seized outside the scope of the warrant and introduced at trial. This step is central to the unraised argument that the Sixth Circuit outlined in its holding. D.E. 549 at 18. Without identifying a single piece of evidence that was introduced beyond the warrant's authorized scope, there is no basis to find that defense counsel had a meritorious objection to raise. No deficient performance exists for counsel's failure to make frivolous objections. *United States v. Martin*, 45 F. App'x 378, 381 (6th Cir. 2002). ("[F]ailure of trial counsel to raise wholly meritless claims cannot be ineffective assistance of counsel."). Thus, if no evidence was introduced at trial that exceeded the scope of the warrant, counsel cannot be deficient for failing to make such an objection. Likewise, Chaney cannot show prejudice stemming from trial counsel's failure to make a frivolous objection, as no reasonable probability exists that the outcome of the proceedings would have been different.

Finally, Chaney cannot show that appellate counsel was ineffective as no objection regarding evidence being outside the scope of the search warrants was raised. Judge Van Tatenhove had no opportunity to grant or deny such an objection. As the Sixth Circuit pointed

15

out, this claim could only be raised on appeal if the objection had been made during trial and subsequently denied.  D.E. 549 at 18.  Since neither occurred, appellate counsel could not have raised the issue on appeal.  Consequently, no deficient performance or prejudice from appellate counsel's failure to raise such a claim can result.

Next, Chaney argues that his trial and appellate counsel were ineffective for failing to argue that exonerating evidence from the KBML's and Kentucky Attorney General's investigations were withheld from the search warrant applications.  D.E. 575-1 at 36.  Chaney asserts that the results of these investigations were exculpatory and that "[i]t's unrebuttable that if the magistrate had been presented with this exculpatory evidence, there is a reasonable probability that the terms of the warrants would have been modified or not issued at all."  *Id.* at 38.  However, this argument was raised in the Defendants' initial motion to suppress (D.E. 71) and was subsequently rejected by the undersigned and Judge Van Tatenhove.  D.E. 125; D.E. 159.  Defendants' initial motion to suppress argued:

> Ultimately, Johnson reached the conclusion that Dr. Chaney, Lesa Chaney, Dusty Chaney, Hoskins, and Wilder may have violated certain Kentucky criminal statutes as a result of the use of pre-signed prescription blanks and presented the case to state and federal prosecutors.  However, *neither state nor federal prosecutors brought any charges against the Defendants at that time.*
>
> Significantly, the Affidavit failed to note that Johnson's Investigative Report was provided to the KBML, and that after an extensive investigation, including reviewing a number of patient files to determine whether the practice was violating the law or accepted medical standards, the KBML *determined that the Ace Clinique was operating properly.*

D.E. 71-1 at 7-8. (emphasis in original).  Defendants further argued that the inclusion of the KBML's decision in the search warrant affidavits would have destroyed any existing probable cause.  D.E. 80 at 4.

16

The undersigned addressed this argument in the report and recommendation, which Judge Van Tatenhove subsequently adopted:

> The State Board of Medical Licensure is a Kentucky agency created by Kentucky Revised Statute Annotated § 311.530 ('there is hereby created in state government an independent board to be known as the State Board of Medical Licensure which shall exercise all medical and osteopathic licensure functions heretofore exercised by the State Board of Health.') The KBML has no authority to evaluate or bring federal criminal charges, or to limit any federal investigation. *See* Ky. Rev. Stat. Ann. § 311.565 ('Powers and functions of board'). Nor was the KBML investigating the same matter—whether Defendants violated federal law—that concerned federal law enforcement in this case. In any case, the KBML's finding 'that there is insufficient evidence of a violation to warrant issuance of a Complaint, but that there is evidence of a practice or activity that requires modification' (D.E. 71-5 at 1), stops far short of '*determin[ing] that the Ace Clinique was operating properly*' as described by Defendants (D.E. 80 at 3). The finding of 'insufficient evidence' by the KBML therefore lacks the evidentiary weight that Defendants give it. Even if included in the Affidavit, recognizing the KBML's actual role, authority, and findings, a substantial basis for a finding of probable cause would still exist.

D.E. 125 at 28-29. (emphasis in original). Chaney is mistaken that the Court would have modified or refused to issue the search warrants if reports from the KBML and Kentucky Attorney General's investigations had been included in the applications. The Court has already held that such state entities have no power to limit federal investigations. Further, even if the reports had been included in the warrant applications, the Court has also held that "a substantial basis for a finding of probable cause would still exist." *Id.* at 29. This issue was raised in the motion to suppress and the Court found it meritless. Chaney has provided no basis to find that any additional argument from his counsel would have changed the outcome of this claim. Likewise, he has provided no evidence that appellate counsel could have successfully raised this claim on appeal. Chaney has failed to show any deficient performance or resulting prejudice on this claim. Accordingly, the claims relevant to the search warrant applications and resulting searches should also be denied.

## V. Expert Witnesses

Chaney next argues that counsel was ineffective for failing to investigate the government's expert witness and for failing to consult and hire expert witnesses to testify for the defense at trial. D.E. 575-1 at 43.  Specifically, Chaney argues that, during trial, counsel should have called Dr. Russell and Dr. Stromberg, the two expert witnesses Lesa Chaney presented at the sentencing evidentiary hearing. *Id.* at 44-55.  Chaney asserts that the testimony from the two experts during the evidentiary hearing would have rebutted the testimony of the government's expert at trial. *Id.* at 48.  However, the issues during sentencing were drug quantity and the loss amount to calculate the sentencing guidelines range.

At the evidentiary hearing, Dr. Stromberg testified that he was retained to "determine a sampling method and a sample by which the proportion of fraudulent cases could be identified" in Chaney's case.  D.E. 460 at 6.  Out of 74,000 prescriptions and 69,577 Medicare claims, Dr. Stromberg determined that 100 of each was a statistically reliable sample to review to determine the true proportion of fraudulent claims.  *Id.* at 6-8.  Dr. Russell then reviewed that sample to determine whether "the care that was provided during those dates appeared to be . . . within the usual standard of practice of medicine."  *Id.* at 43-44.  Due to the unavailability of some records, less than 100 prescriptions and claims were reviewed.  *Id.* at 10.  However, Dr. Stromberg testified that this did not render the sample statistically unreliable.  *Id.*  Dr. Russell later testified that the prescriptions were supported by a legitimate medical need and the claims were medically necessary and appropriate.  *Id.* at 65-66.

Dr. Stromberg confirmed Dr. Russell's findings that "none of the claims reviewed were found to be fraudulent."  *Id.* at 11.  However, Dr. Stromberg also testified that he could not remember if any of the prescriptions or claims that were the subject of the jury's verdict were

included in his sample.  *Id.* at 14.  More importantly, when asked if he was testifying that the jury was incorrect in its finding of fraud, Dr. Stromberg stated, "No, Absolutely not.  But the – that's not my job, but the – what we found was that the randomly selected claims were not found to be fraudulent."  *Id.*  He also stated that his role was to draw the sample for review in a fair way, "not to assess whether [the claims] were fraudulent or not."  *Id.* at 15.

Even if the Court assumes that deficient performance exists from counsel's failure to investigate the government's expert witness and retain Dr. Stromberg and Dr Russell to testify at trial, Chaney has still failed to prove any resulting prejudice.  That is, Chaney has not shown a reasonable probability that the outcome of his trial would have been different had these two experts testified for the defense.  *United States v. Slater*, 2011 WL 7168921, *11 (E.D. Ky. Dec. 5, 2011) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (quoting *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)).

During sentencing, Judge Van Tatenhove specifically addressed the issues with the experts' testimony:

> You know, that -- and I, you know, I've read carefully the briefing that was filed, of course, listened carefully, for example, to Dr. Russell's testimony, the expert testimony that was raised here.  And, I mean, I think one of the problems with the expert testimony, it's clear, as I've gone back and looked at that, is that it provides kind of this narrow bit of information, but not a real complete set of information as it relates to the alleged fraud that took place in this particular case.
>
> And I think it's very appropriate for guideline purposes to consider conduct that's much broader than simply the counts of conviction, for example, for, you know, pre[-]signed prescriptions, you know.

D.E. 508 at 15-16.  Dr. Stromberg and Dr. Russell provided only a narrow review of the tens of thousands of prescriptions and claims involved in Chaney's case.  The evidence presented at trial demonstrated that:

> [Chaney] knowingly left pre-signed prescriptions for distribution by unlicensed and unqualified medical staff, told an employee "not to tell anyone" about the pre-signed scripts, shouted at employees to "fix" urine drug screens that showed signs of patients' drug abuse and/or diversion, somehow saw up to four patients every fifteen minutes, forced others to wait for up to eight hours to be seen, fabricated medical records, submitted fraudulent billings to public and private insurance providers, ordered an employee to obtain prescriptions unlawfully and divert them to Dr. Chaney for his own private use, and even encouraged one patient to dissolve the pills he had prescribed and inject them.

D.E. 371 at 37-38. Further, multiple witnesses beyond Dr. Loyd, the government's expert, testified to these events. In addition to Dr. Loyd, Dr. Morgan and Dr. Youlio also testified that the pre-signed prescriptions were illegitimate. *Id.* at 9.

Chaney argues for the first time in his reply that Dr. Mongarido should have also been questioned regarding pre-signing prescriptions. D.E. 610 at 26. Chaney asserts that Dr. Mongarido stated in a pretrial interview that "pre-signing prescriptions on occasion was a common and necessary practice among physicians in the area" and that he had done so on occasion.[6] *Id.* at 26. However, this limited and vague assertion is not enough to show a reasonable probability that the outcome of Chaney's trial would have been different. The alleged statement by Dr. Mongarido provides no context or evidence as to whether that opinion would even apply to the facts of Chaney's case. Further, even if this statement by Dr. Mongarido was presented at trial, Chaney's claim still fails. Multiple witnesses testified that the manner in which Chaney pre-signed the prescriptions was illegitimate. D.E. 371 at 8-9. Chaney has provided no evidence or analysis as to whether and why the narrow opinions of Dr. Stromberg and Dr. Russell and the vague opinion of Dr. Mongarido in the context of a 25-day trial would have overcome the testimony of multiple witnesses that the jury heard and relied upon in reaching its verdict. Chaney "must show that there

---

[6] As previously noted, arguments made for the first time in a reply brief are waived and merit no consideration. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010). Further, Chaney's reply memorandum contains many factual assertions, but they were not accompanied by any declaration that they were made under penalty of perjury.

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Chaney has failed to carry his burden of proving prejudice, and thus, that his claim has merit. Accordingly, the undersigned recommends that these claims also be denied.

## VI. Claims Concerning Alleged Political Coercion

Next, Chaney argues that his trial and appellate counsel were ineffective for failing to argue, present, and preserve evidence that a witness presented and introduced the Kentucky Attorney General to Chaney's office for the purpose of extorting financial contributions while Chaney was under investigation by state prosecutors, which would have impeached or suppressed the witness's testimony. D.E. 575-1 at 55. Chaney's arguments here are verbose and often rambling, particularly in his reply memorandum. Again, matters raised for the first time in a reply brief are waived and merit no consideration. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010). This procedural bar eliminates the need for the Court to consider Chaney's claims that his trial counsel had a conflict by virtue of having contributed to the Attorney General's campaign.

The Court has reviewed all of Chaney's arguments and attempts to present them here fairly and efficiently. In truth, the voluminous arguments made can be resolved succinctly by focusing upon prejudice. These claims stem from the FBI 302 statements of Benny Ray Bailey, Jr., who stated that Chaney and others gave the Kentucky Attorney General a duffle bag of cash. D.E. 598-1 at 4. Chaney states that he was pressured to give the money and was "aware that he was under investigation by state prosecutors." D.E. 575-1 at 56. Chaney also alleges that he was threatened by law enforcement to tell what he knew about political corruption in Kentucky. *Id.* at 56-57. Chaney states that he repeatedly requested his trial counsel to subpoena certain individuals involved in this political coercion to testify as witnesses and subsequently requested that his

appellate counsel bring these issues on appeal. *Id.* at 57. Chaney also alleges that Senator Benny Ray Bailey, Sr., initiated the investigation in this matter. *Id.*

Without citing to any authority, Chaney asserts that he would have been acquitted, the Court would have declared a mistrial, or witnesses would have been barred from testifying had this information been presented.[7] *Id.* at 59, 63. Chaney also argues that the Sixth Circuit would have ordered a new trial or a hearing on the matter if his appellate counsel had raised these issues on appeal. *Id.* at 59. Again, Chaney fails to cite to any authority in support of this conclusion, and a conclusory statement is insufficient to prove prejudice. *See Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) (citing *Strickland*, 466 U.S. at 693) ("The defendant must affirmatively prove prejudice.").

Most importantly, Chaney fails to explain why this information would not have harmed his chances of success at trial. Imagine you are on trial for many counts of healthcare fraud and making false statements concerning health care matters. The government has finished presenting its case, which is strong. Would it help in your defense to put on proof that you bribed the Attorney General of Kentucky while being investigated by Kentucky authorities concerning your healthcare practices? Of course not, it would only serve to bolster any evidence of dishonesty. And it would only get worse if the jury found out the investigation was resolved in your favor. In other words, Chaney's argument is detached from reality. Additionally, this alleged bribery was tied to the state investigation of Chaney and Ace Clinique, not the present federal matter. Thus, rather than

---

[7] Chaney also describes the cross-examination of Christopher Johnson in his § 2255 motion and states that when asked who sent Mr. Johnson to investigate Chaney, the Court sustained the government's unopposed objection. D.E. 575-1 at 58. This is an inaccurate retelling of events. The trial transcript reflects the bench conference regarding this line of questioning. D.E. 396 at 67 – 71. Chaney's trial counsel outlined the theory that Bailey, Jr., or his father made the complaint that initiated the federal investigation of Chaney and Ace Clinique. *Id.* at 68-69. The Court stated that it would allow the line of questioning if it was disclosed that the complaint was not submitted by a person who requested to remain anonymous. *Id.* at 70-71. However, following the bench conference, Mr. Johnson testified that the person who submitted the complaint requested to remain anonymous. *Id.* at 71. Defense counsel then moved on with her line of questioning. *Id.*

helping, this information that Chaney paid a bribe would have only harmed his chances of success at trial.

For the same reasons, Chaney has also failed to show prejudice for appellate counsel's failure to raise these issues on appeal. Chaney has failed to argue or explain why the Sixth Circuit would not also find this evidence harmful rather than helpful to his case. Chaney alone "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As he has failed to carry his burden, these claims should also be denied.

### VII. Admitted Ineffective Assistance of Appellate Counsel

Finally, Chaney argues that his appellate counsel has admitted to providing ineffective assistance, and thus, asserts that prejudice should be presumed. D.E. 575-1 at 63-65. Chaney relies on an e-mail from his appellate counsel in support of his argument. 575-2 at 33. The e-mail, as Chaney attached it to his § 2255 motion, states, "But you have some pretty good arguments for a 2255 – including, potentially, my failure to address the []external influence argument in the brief?" *Id.* Chaney asserts that this is an admission of ineffective assistance of counsel that is inherently prejudicial. However, the government filed a complete version of the e-mail, which includes appellate counsel's suggestions for next steps following Chaney's appeal and analysis of potential issues to raise. D.E. 617-2 at 4.

Appellate counsel's e-mail does not amount to ineffective assistance of counsel in and of itself. Chaney bears the burden of proving deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Again, a conclusory statement is insufficient to prove prejudice. *See Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) (citing *Strickland*, 466 U.S. at 693) ("The defendant must affirmatively

prove prejudice.").  In any event, the portion of the e-mail that Chaney relies on relates to his external influence claim.  D.E. 575-1 at 64.  As previously discussed, no possibility of prejudice arose from appellate counsel's failure to raise this issue on appeal.  Thus, this claim should also be denied.

### VIII. Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that Chaney's 28 U.S.C. § 2255 motion (D.E. 575) be **DENIED**.

This case does not warrant an evidentiary hearing.  An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b); *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id*.  The record establishes that Chaney's claims do not have merit and therefore "conclusively show[s]" he is not entitled to relief.  *Arredondo*, 178 F.3d at 782.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue.  Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  *See also* Rule 11 of the Rules Governing Section 2255 Proceedings.  This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve

encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Court has considered the issuance of a Certificate of Appealability as to each of Chaney's claims. No reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 16th day of December, 2021.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge