UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Crim. No. 6:14-cr-00037-GFVT-1 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JAMES ALVIN CHANEY, M.D., | ) | **&** |
| | ) | **ORDER** |
| Defendant/Petitioner. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on the Petitioner's *pro se* § 2255 Motion to Vacate [R. 575], United States Magistrate Judge Hanly A. Ingram's Recommended Disposition [R. 632], and the Petitioner's Motion to Amend his § 2255 motion [R. 635.]  Consistent with local practice, Judge Ingram reviewed the § 2255 motion and ultimately recommends that the Court deny it in its entirety.  [R. 632.]  After the Recommended Disposition was filed, Mr. Chaney moved to amend his § 2255 motion.  [R. 635.]

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Recommended Disposition or else he waives his rights to appeal.  In order to receive de novo review by this Court, any objection to the recommended disposition must be specific.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  A specific objection must "explain and cite specific portions of the report which [the defendant] deem[s] problematic."  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (internal quotations and citations omitted).  A general objection that fails to identify specific factual or legal issues from the recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and

wastes judicial economy. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Mr. Chaney mailed his objections to Judge Ingram's Recommended Disposition on January 4, 2022, after receiving the recommendation on December 22, 2021. [R. 634 at 1, 634-1 at 1.] He also moved to amend his § 2255 motion to incorporate arguments and evidence he presented for the first time in his reply brief, some of which Judge Ingram declined to consider. [R. 635.] The Court acknowledges its duty to review Mr. Chaney's filings under a more lenient standard than that applied to attorneys because he is proceeding *pro se*. *See Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). Mr. Chaney's objections, except as to Judge Ingram's decision not to issue a Certificate of Appealability, are sufficiently definite to trigger the Court's obligation to conduct a de novo review. *See* 28 U.S.C. § 636(b)(1)(C). The Court has satisfied its duty by reviewing the entire record, including the pleadings, the parties' arguments, relevant case law and statutory authority, and applicable procedural rules. For the following reasons, Mr. Chaney's objections will be **OVERRULED** and his Motion to Amend will be **DENIED**.

I

Judge Ingram's Recommended Disposition accurately sets forth the factual and procedural background of this case. [R. 632 at 2-7.] The Court mentions only key facts to frame its discussion and analysis and incorporates Judge Ingram's discussion of the record into this Order. In an indictment filed in October 2014, followed by superseding indictments in April and December 2015, Mr. Chaney and his co-defendants were charged with numerous controlled substances, money laundering, and fraud offenses. [R. 1; R. 136; R. 190.] Mr. Chaney proceeded to trial, where the jury returned a mixed verdict and found him guilty of many offenses but also acquitted him of a number of charges. [R. 519.] Mr. Chaney was sentenced to

2

180 months of imprisonment to be followed by three years of supervised release. *Id.* He appealed various decisions made by this Court, all of which were affirmed. [R. 549.] Mr. Chaney then filed a petition for writ of certiorari, which was denied. [R. 552; R. 553.] Now, he asks the Court to vacate his sentence pursuant to § 2255, arguing he faced ineffective assistance of counsel.

Judge Ingram summarized the grounds for Mr. Chaney's § 2255 motion as follows:

1. Ineffective assistance of trial counsel for failure to investigate communications between Juror 116, the jury administrator, and other members of the jury.

2. Ineffective assistance of trial counsel for failure to investigate communications between the jury administrator and the jury.

3. Ineffective assistance of trial and appellate counsel for failure to investigate, develop, and argue the "extraneous influence issue."

4. Ineffective assistance of trial counsel for failure to object to the post-trial questionnaire of Juror 34 and investigate who denied him an audience with the Court.

5. Ineffective assistance of trial counsel for failure to preserve argument regarding the Court's erroneous analysis of Federal Rule of Evidence 606(b) for appeal.

6. Ineffective assistance of trial counsel for failure to preserve argument regarding a violation of Federal Rule of Criminal Procedure 43 for appeal.

7. Ineffective assistance of trial and appellate counsel for forfeiting a motion to suppress all property seized during the search of Ace Clinique, Chaney's residence, and Chaney's airplane hangar.

8. Ineffective assistance of trial and appellate counsel for failure to argue that the FBI withheld evidence of the Kentucky Board of Medical Licensure's and the Kentucky Attorney General's investigations in the applications for the search warrants.

9. Ineffective assistance of trial counsel for failure to consult and hire and call experts during trial.

10. Ineffective assistance of trial counsel for failure to investigate the government's expert witnesses prior to trial.

11. Ineffective assistance of trial and appellate counsel for failure to argue that a witness "presented and introduced the Kentucky Attorney General to

3

>   Chaney's office for the purpose of extorting financial contributions while Chaney and Ace Clinique were under investigation by state prosecutors."
>
> 12. Ineffective assistance of trial and appellate counsel for failure to present evidence of political intimidation and coercion by a witness that would have challenged and impeached the credibility and motives of the witness and investigators.
>
> 13. Ineffective assistance of appellate counsel from counsel's own admission.

[R. 632 at 6-7 (citations omitted).] Judge Ingram noted that these "grounds are often repetitive, overlapping, and contain multiple legal theories." *Id.* at 7. He grouped the claims into the following general categories: Jurors 116 and 34, the Motion to Suppress, Expert Witnesses, Alleged Political Coercion, and Appellate Counsel. *Id.* After thoughtfully applying the *Strickland* elements—deficient performance and prejudice—to each of Mr. Chaney's ineffective assistance of counsel arguments, Judge Ingram found he was not entitled to any relief. *Id.* at 9-24. The Court will summarize Mr. Chaney's grounds for relief and Judge Ingram's recommended disposition before turning to his specific objections.

   Mr. Chaney raised a number of concerns with incidents involving two jurors during his trial. [R. 575 at 5.] Juror 116 reported after trial that jurors were talking about the case before they were released for deliberations, shared opinions about the attorneys' conduct, and did not pay sufficient attention to testimony. [R. 632 at 4 (quoting R. 371 at 20-21).] These concerns were raised to the jury administrator. The Court interviewed the juror *in camera* and found that her claims did not suggest the jury was facing outside influence, so further investigation was unwarranted. *Id.* Second, Mr. Chaney's brother reported he had a conversation with Juror 34, so the Court approved a questionnaire for that juror based on questions proposed by the defendants. *Id.* at 5. The Court reviewed the Juror's responses and found again that there was no concern about outside influence reaching the jury. *Id.* Mr. Chaney claims his trial counsel, Elizabeth Hughes, provided ineffective assistance by failing to investigate these communications, develop

4

an argument regarding extraneous influence, and request a *Remmer* hearing. [R. 575-1 at 10-11.] He also argues the Court "interfered" with his counsel's assistance by keeping information about these communications private. *Id.* at 11.

Judge Ingram determined none of the concerns raised by those jurors prejudiced Mr. Chaney, so his counsel could not have provided ineffective assistance by failing to pursue them more. [R. 632 at 10, 12.] He relied on the Sixth Circuit's specific and categorical finding that none of Juror 116's concerns "could have possibly prejudiced the defendant[]." [R. 549 at 32.] Regarding Juror 34, Judge Ingram explained that Ms. Hughes did file a proposed questionnaire with questions about that juror and that the Court rejected questions similar to that which Mr. Chaney believes should have been included. [R. 632 at 11.] Consequently, he found Mr. Chaney suffered no prejudice because he could not show his proposed question would have influenced the outcome of his trial in any way. *Id.* at 12.

Next, Mr. Chaney claimed his counsel should have argued that all property seized from his home, clinic, and airport hangar should have been suppressed because the search exceeded the scope of the warrants and that the FBI withheld information in its applications for those warrants. *Id.* Judge Ingram noted that the Court did consider the scope of the warrants and determined that even if this argument had been developed, the claim would fail. *Id.* at 14. Further, Mr. Chaney did not point to any introduced evidence that was seized outside of the scope of the warrant, so Judge Ingram found no prejudice existed. *Id.* at 16. On a similar note, Judge Ingram rejected Mr. Chaney's claim that his counsel should have argued exonerating evidence was not included in the FBI's warrant applications because that argument *was* presented in the Defendant's Motion to Suppress and was rejected. *Id.* Judge Ingram found Mr.

5

Chaney did not show "any additional argument from his counsel would have changed the outcome of this claim," so there was no deficient performance or prejudice. *Id.* at 17.

Mr. Chaney then claimed he suffered ineffective assistance of counsel for failure to investigate government witnesses and to hire expert witnesses in defense. [R. 632 at 18.] He believes his attorneys should have called the expert witnesses that testified at his co-defendant's sentencing in his support at trial, but Judge Ingram found the sentencing issue was distinct from any trial issue. *Id.* at 18. He further found Mr. Chaney failed to show the outcome of his case would have been different if these witnesses were called. *Id.* at 19.

Next, Mr. Chaney argues that his counsel inadequately addressed the "political coercion" he claims he faced. First, Judge Ingram found that Mr. Chaney's claim that his counsel had a conflict of interest because she contributed to the Attorney General's campaign was improperly raised for the first time in his reply brief and could not be considered. *Id.* at 21. Judge Ingram then found Mr. Chaney's trial would not have ended differently if any of the remaining "political coercion" arguments had been presented or preserved. *Id.* at 21-22.

Finally, Judge Ingram addressed Mr. Chaney's allegation that his appellate counsel admitted to providing ineffective assistance. *Id.* at 23. This allegation was based on an email Mr. Chaney received from his appellate counsel advising him he may have a "good argument" for his § 2255 motion based on counsel's "failure to address the external influence argument in the brief." *Id.* (quoting R. 575-2 at 33). Judge Ingram found Mr. Chaney did not show the email alone constituted deficient performance or prejudiced him, and that regardless, the underlying external influence argument was unsuccessful. *Id.* at 23-24.

Thus, Judge Ingram recommended that all of Mr. Chaney's grounds for relief be denied. He also recommended that no certificates of appealability issue. *Id.* at 25. After Judge Ingram

filed his Recommended Disposition, Mr. Chaney simultaneously filed his objections and a Motion to Amend his initial § 2255 motion. [R. 634; R. 635.] The Court will first determine whether the motion can be amended, then consider Mr. Chaney's objections.

## II

### A

Judge Ingram found that Mr. Chaney's argument regarding Ms. Hughes's alleged conflict of interest was improperly raised for the first time in his reply in support of the § 2255 motion. [R. 632 at 21.] Therefore, Judge Ingram declined to consider whether that conflict constituted ineffective assistance of counsel. Mr. Chaney moved to amend his § 2255 motion to incorporate that claim into his initial motion. [R. 635 at 2.] He also filed an affidavit affirming the veracity of evidence submitted in support of his reply.[1] *Id.*

Motions raised under § 2255 can be amended in accordance with Federal Rule of Civil Procedure 15. *Anderson v. United States*, 39 Fed. App'x 132, 136 (6th Cir. 2002). That rule allows a party to amend a pleading once as a matter of course within twenty-one days of service of a responsive pleading or service of a Rule 12(b), (e), or (f) motion, with the opposing party's written consent, or with the Court's leave. Fed. R. Civ. P. 15(a). The government's response was filed in February 2021, and Mr. Chaney's Motion to Amend was filed in January 2022, so he cannot amend his motion as a matter of course. He also does not present the government's written consent to his amendment, so Mr. Chaney can only amend his motion with the Court's leave.

There is a "liberal policy of permitting amendments," though the presence of certain factors can outweigh this policy. *Anderson*, 39 Fed. App'x at 136 (citing *Marks v. Shell Oil Co.*,

---

[1] Mr. Chaney included this affidavit because Judge Ingram noted that his reply included "many factual assertions . . . not accompanied by any declaration that they were made under penalty of perjury." [R. 632 at 7; R. 634 at 1.]

7

830 F.2d 68, 69 (6th Cir, 1987)).  Such factors include: "'undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)).  Delay alone is insufficient to deny a Motion to Amend.  *Id.*  Determining whether amendment is warranted is left to the sound discretion of the trial court.  *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 591 (6th Cir. 1990) (citation omitted).

     Mr. Chaney specifically asks to amend his motion to incorporate grounds nine and ten of his reply brief.  [R.635 at 2.]  Those grounds contain many distinct arguments, but the Motion to Amend focuses on his claim that Ms. Hughes suffered a conflict of interest because she gave campaign contributions to the Attorney General while Mr. Chaney was being investigated.  [*See generally* R. 635.]  He claims he is entitled to amend his initial motion because he discovered the relevant "factual and material evidence . . . months after the initial memorandum was filed."  *Id.*  His initial §2255 motion was filed July 24, 2020, and he did not discover the report he uses to support his conflict of interest claim until January 7, 2021.

     The Court first finds that Mr. Chaney significantly delayed filing his Motion to Amend following his discovery of the relevant material.  Nearly a year passed between Mr. Chaney obtaining the relevant report in January 2021 and Judge Ingram issuing his Report and Recommendation in December 2021.  [R. 632; 635.]  Mr. Chaney had plenty of time to amend his motion in that time.  The Court recognizes that he may have believed he adequately presented this newly found material because it was included in his reply brief.  However, it is a well-established legal principle that reply briefs cannot raise new legal arguments.  *Sanborn v. Parker*,

8

629 F.3d 554, (6th Cir. 2010). This maxim is not changed when the movant is proceeding *pro se. See Bormuth v. Cty. of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017). The petitioner had ample opportunity to amend his initial motion after he discovered the new materials.

Undue delay cannot, on its own, justify denial of a motion to amend. But the Court also finds that amendment would be futile in this matter. Mr. Chaney specifically wants to amend grounds nine and ten of his § 2255 motion to include his arguments and evidence regarding Ms. Hughes's conflict of interest. [*See* R. 635 at 9.] Ground nine claims she was ineffective for not presenting evidence at trial that a government witness "presented and introduced" the Attorney General to Mr. Chaney's office "for the purpose of extorting financial contributions." [R. 575 at 17.] In his reply in support of that motion, Mr. Chaney claimed his trial counsel failed to present this information at trial because she had a conflict of interest, established by contributions she made to the Attorney General's campaign during his investigation into Mr. Chaney. [R. 620 at 10-23.] Judge Ingram explicitly did not consider Mr. Chaney's conflict of interest claim because it was raised for the first time in his reply. [R. 632 at 21.]

The Court finds that amending the §2255 motion would be futile because evidence of Ms. Hughes's contributions would not create a conflict of interest that would establish ineffective assistance of counsel. Mr. Chaney is correct that a "modified" *Strickland* analysis is used to determine whether a conflict arising to ineffective assistance of counsel exists. This modified standard requires the Defendant "point to specific instances in the record and make a factual showing that the attorney and the defendant have inconsistent interests." *United States v. Gandy*, 926 F.3d 248, 261 (6th Cir. 2019).

Mr. Chaney does not explain how he and Ms. Hughes had inconsistent interests. It appears he believes counsel did not present evidence of Mr. Chaney's bribe to the Attorney

9

General because she wanted to "protect the interests of the A.G.'s political aspirations," as proven by her contributions to his campaign. [R. 635 at 8.] But even if Ms. Hughes was interested in protecting the Attorney General's reputation by not admitting evidence that he accepted a bribe from Mr. Chaney, that interest aligned with her client's. Ms. Hughes explained in her affidavit that "there was absolutely no benefit to be had in bringing this allegation of illegal and corrupt behavior to a jury's attention." [R. 617-4 at 10.] In fact, she reasonably believed that exposing Mr. Chaney's bribe would *damage* his case. *Id.* She stated that Mr. Chaney "deferred" to this analysis. *Id.* at 11.

Mr. Chaney's assertion that this evidence would show he faced "political coercion" does not explain how, even if proven, this coercion would have resulted in a different outcome at trial. [R. 575-1 at 55-63.] Evidence that Mr. Chaney was coerced to bribe the Attorney General to drop the investigation into his practice would in no way have diminished the substantial evidence presented establishing drug trafficking and healthcare fraud. Put simply, there is no evidence that Mr. Chaney's interests conflicted with those of Ms. Hughes. Because he cannot show there was a conflict of interest constituting ineffective assistance of counsel, amending his § 2255 motion to include this conflict would be futile. The Court denies Mr. Chaney's Motion to Amend his § 2255 motion. Now, the Court turns to Mr. Chaney's specific objections to the Recommended Disposition. [R. 634.]

## B

### 1

Mr. Chaney first objects to Judge Ingram's rejection of his "political coercion" claim. [R. 634 at 1-9.] To reiterate, he believes Ms. Hughes did not present evidence that he was "coerced" to bribe the Attorney General to drop the investigation into his practice because she

contributed to his campaign, so she was interested in maintaining the Attorney General's reputation. Crucially, Mr. Chaney was not charged for this bribe and it was not presented at trial. Judge Ingram focused on the prejudice element of the *Strickland* analysis, finding that Mr. Chaney only made conclusory statements that he would have been acquitted or given a new trial if his claims of political coercion were presented. [R. 632 at 20-23.] In fact, like Ms. Hughes, Judge Ingram noted that presenting evidence of this "political coercion" that caused Mr. Chaney to engage in *more* illegal activity would likely have harmed him at trial. *Id.* This objection is largely duplicitous of the Motion to Amend, arguing Judge Ingram's ruling was incorrect because he did not consider Mr. Chaney's improperly raised conflict of interest claim. *Id.* He argues the conflict claim should have been considered regardless of whether amendment is proper because it "relates back" to the initial motion. *Id.* at 2.

      Mr. Chaney misunderstands the purpose of the relation back doctrine. He quotes the portion of Federal Rule of Civil Procedure 15 that determines when an amended pleading relates back to the original. But this provision is about the statute of limitations, establishing that when a court allows an amended pleading, it is not time-barred if it arises from the same common core of facts. *See United States v. Clark*, 637 Fed. App'x 206, 208 (6th Cir. 2016). Rule 15(c) does not provide its own grounds to allow amendment and does not establish that newly raised arguments can still be considered if they relate back to the original without being granted leave to amend. [*See* R. 634 at 2.] Therefore, Judge Ingram was correct in declining to address the alleged conflict because it was improperly raised for the first time in Mr. Chaney's reply.

      Additionally, as explained above, Mr. Chaney would not be able to establish a conflict because he had no legitimate interest in presenting the "political coercion" he alleges he faced to the jury. Therefore, even if Ms. Hughes had an interest in maintaining the Attorney General's

11

reputation, such interest would not conflict with those of Mr. Chaney because it would be *against* his interest to offer further evidence of non-exculpatory illicit activity at trial. Mr. Chaney presumes the existence of a conflict merely because of Ms. Hughes's contributions but does not explain where their interests diverged. [R. 634 at 2-9.] He also cannot show Ms. Hughes's representation suffered because it was reasonable trial strategy to not introduce evidence that her client bribed a state official when the circumstances of the bribe would not have exonerated him of any charged offense. *Gandy*, 926 F.3d at 261. Mr. Chaney did not properly raise this argument and cannot show this alleged conflict resulted in ineffective assistance of counsel, so his first objection is overruled.

### 2

Mr. Chaney next objects to Judge Ingram's rulings on two of his claims regarding expert witnesses. He first objects to Judge Ingram's denial of his claim that Ms. Hughes should have presented Dr. Mongarido's statement that "on occasion" pre-signing prescriptions is "common and necessary." [R. 634 at 9-13.] Judge Ingram noted that this argument was also raised for the first time in Mr. Chaney's reply but went on to analyze the claim and found Mr. Chaney could not show prejudice resulted from the absence of this statement. [R. 632 at 20-21.] Because Judge Ingram did not decline to analyze this claim, Mr. Chaney's repeated arguments that this portion of his reply should be considered because it "relates back" to the original are irrelevant.

Mr. Chaney insists that Dr. Mongarido's statement should have been introduced as it suggests pre-signing prescriptions is not necessarily illegal. [R. 634 at 11.] He also asserts that Ms. Hughes failed to investigate this potentially mitigating evidence. *Id.* Mr. Chaney cannot show he was prejudiced by this statement not being introduced. As Judge Ingram noted, a number of witnesses testified that pre-signing prescriptions is "illegitimate." [R. 371 at 9.] Mr.

12

Chaney does not explain how Dr. Mongarido's single statement, given outside of the context of this trial, would have overcome the substantial conflicting testimony and resulted in a different outcome. He does not establish a "reasonable probability" that presenting Dr. Mongarido's opinion on pre-signed prescriptions would have instilled reasonable doubt in the jury. *See Strickland*, 466 U.S. at 695. Merely stating that "without question" this testimony would have injected doubt into at least one juror is insufficient to establish prejudice.

Within this objection, Mr. Chaney also challenges Judge Ingram's ruling that Ms. Hughes did not ineffectively assist him by not calling an expert, specifically Dr. Stromberg or Russell, in his support at trial. [R. 634 at 13-15.] Those doctors were called at Mr. Chaney's co-defendant's sentencing, and he believes they "obviously" were available "to challenge and provide the panel with an 'alternative narrative.'" *Id.* at 14. Judge Ingram rejected this claim because those experts conducted "only a narrow review of the tens of thousands of prescriptions and claims involved in Chaney's case" that could not have outweighed the evidence presented against him. [R. 632 at 19.]

Mr. Chaney insists in his objection that his trial would have "no doubt" had a different outcome if these experts testified. [R. 634 at 13.] He does not explain why he believes their testimony would have been "highly probative and exculpatory." *Id.* Mr. Chaney does include statements that challenge more generally Ms. Hughes's decision not to call any expert witness, not just one or both of those doctors. *Id.* ("trial counsel . . . fail[ed] to consult a medical expert of any kind"; "reasonable counsel . . . would have consulted experts such as Drs. Stromberg and Russell"; "there was NO adversarial process at work in this instance"; "counsel made the unreasonable strategic decision to rely solely on the defendant himself".) Ms. Hughes explains that she believed the United States' expert witness did not need to be contradicted by a defense

13

expert because his testimony was actually *helpful* to the Defendants. [R. 617-4 at 7.] She states she, Mr. Chaney, and his co-defendant "*all* determined" there was no need to hire an expert witness. *Id.* (emphasis added).

A client's consent to his counsel's strategy weighs against finding counsel's performance was deficient. *See Tinsley v. Million*, 399 F.3d 796, 809 (6th Cir. 2005). Further, the decision of whether to call a witness is fundamentally the sort of trial strategy that Courts decline to second-guess. *Samatar v. Clarridge*, 225 Fed. App'x 366, 372 (6th Cir. 2007). The Sixth Circuit has emphasized that deciding not to call an expert witness "'is unquestionably tactical'" because the expert could find further inculpatory evidence. *Id.* (quoting *State v. Glover*, 2002 Ohio 6392, 2002 WL 31647905 at *5 (Ohio Ct. App. 2002)). Even if an attorney's decision not to call an expert is "debatable," such an action does not arise to ineffective assistance. *Id.* As Ms. Hughes provided legitimate reasons for not calling a witness and indicated Mr. Chaney agreed with that approach, her decision not to call an expert witness was not deficient.

Ultimately, a client must be able to show prejudice resulted to establish ineffective assistance of counsel for failure to call a witness. Mr. Chaney cannot establish that if Drs. Stromberg and Russell were called, his trial would have resulted differently. Those experts, in the context of a sentencing, conducted a very narrow review of issued prescriptions. [R. 508 at 15.] The government proved through several other witnesses and substantial evidence that Mr. Chaney had a practice of pre-signing illegitimate prescriptions and fraudulently billed providers. [R. 371 at 2.] The narrow expert testimony would not be sufficient to overcome the substantial evidence presented at trial, which showed a complete picture of Mr. Chaney's practice. Mr. Chaney cannot establish prejudice resulted from his attorney's choice not to call these experts

and does not present a specific argument as to why calling any other witness would have resulted differently. This objection is accordingly overruled.

3

Mr. Chaney also objects to Judge Ingram's "failing to recognize and consider" his claim that counsel should have presented an "advice of counsel" defense to the healthcare fraud charges. [R. 634 at 15-17.] He claims the Medical Fraud Unit, which investigated and absolved Mr. Chaney for Medicaid fraud, received a letter from one of Mr. Chaney's attorneys that indicates they advised him about billing and prescribing. According to Mr. Chaney, his attorneys' guidance negates any intent to commit healthcare fraud.

The § 2255 petition does not include this allegation. In fact, when attempting to establish the grounds for this objection, he can only cite to where he "referenced the MFU Report in the Initial Memorandum," Ms. Hughes's affidavit, and his response "to her self-serving narrative in the Reply." [R. 634 at 16.] Each of these instances references the report in other contexts; nowhere before filing his objections did Mr. Chaney claim Ms. Hughes should have presented an advice of counsel defense. A petitioner waives a claim if it is not included in their initial § 2255 motion and instead is raised for the first time in their objections to the Magistrate Judge's Report and Recommendation. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Accordingly, this objection does not challenge a ruling, or lack of ruling, on a properly raised claim, so it is overruled.

4

Finally, Mr. Chaney asserts Judge Ingram incorrectly decided the jury misconduct issues. Judge Ingram relied on the Sixth Circuit's holding that none of the incidents involving Juror 116 "'could have possibly prejudiced the defendants.'" [R. 632 at 10 (quoting R. 549 at 32).] As to

Juror 34, Judge Ingram found no prejudice resulted from Juror 34's allegations. Now, Mr. Chaney again complains that his trial and appellate counsel did not raise certain issues regarding these jurors.

Though Mr. Chaney raises many concerns with these jurors, he does not establish any prejudice that resulted from his counsel's treatment of these issues. His only assertions regarding prejudice state "extensive case law confirms, 'prejudice will be found when a defendant is not represented by counsel when the court delivers a supplemental instruction to the jury'" and "it would be 'blinking reality' to not recognize the influence a bailiff may have on a panel." [R. 634 at 19 (first quoting *French v. Jones*, 332 F.3d 430 (6th Cir. 2002) then *Parker v. Gladden*, 385 U.S. 363, 363 (1966)).

Neither case is applicable here. *French* resolved a petitioner's claim that the court *denied* him counsel when it supplemented a jury instruction without his counsel present. 332 F.3d at 435-436. Mr. Chaney did not raise a denial of counsel claim and a court's decision to supplement a jury instruction is not analogous to allegations juror misconduct. *Parker* found a petitioner was denied a fair trial when a juror heard a bailiff say, "oh that wicked fellow [petitioner], he is guilty." 385 U.S. at 363. The conduct at issue in this matter, the jury administrator's denial of an audience with the judge, is in no way as prejudicial as an affirmative statement of guilt made by a court officer. Without a coherent argument as to why the two juror issues resulted in prejudice, Mr. Chaney cannot succeed on an ineffective assistance of counsel claim. This objection is overruled.

## C

The final issue is whether a certificate of appealability should issue as to any of Mr. Chaney's claims. A certificate of appealability may issue where the movant has made a

16

"substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). It is the reviewing court's role to indicate what specific issues satisfy the "substantial showing" requirement. 28 U.S.C. §2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

Judge Ingram determined no COA should be issued for any of Mr. Chaney's claims. He found "no reasonable jurist would find the assessments on the merits above to be wrong or debatable." [R. 632 at 25.] Mr. Chaney did not specifically object to this determination, merely stating "at a minimum, the Court should issue a Certificate of Appealability" at the end of each objection. [R. 634 at 9, 13, 15 17, 21.] Such a conclusory statement is inadequate to properly object to this determination. The Court adopts Judge Ingram's finding that Mr. Chaney has not established a Certificate of Appealability is warranted.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Mr. Chaney's Motion for Leave to Amend his § 2255 motion **[R. 635]** is **DENIED**;

2. Judge Ingram's Recommended Disposition **[R. 632]** is **ADOPTED** as and for the Opinion of the Court;

3. Mr. Chaney's objections to the Recommended Disposition **[R. 634]** are **OVERRULED**;

4. Mr. Chaney's motion to vacate his sentence under § 2255 **[R. 575]** is **DENIED WITH PREJUDICE**, and;

5. A Certificate of Appealability is **DENIED**.

17

This the 2nd day of May, 2022.

Gregory F. Van Tatenhove
United States District Judge